ORIGINAL

Approved: *[signature]*
MICHAEL D. NEFF/MATTHEW J. LAROCHE
Assistant United States Attorneys

Before: THE HONORABLE FRANK MAAS
United States Magistrate Judge
Southern District of New York

16 MAG 2665

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>ERIC ROBINSON,<br>ELDRIDGE MITCHELL,<br>JHAYMES BETHEL BROWN, JR.,<br>CRAIG SMITH,<br>AKIL CHRISTOPHER, and<br>KORDELL NESBITT,<br><br>Defendants. | SEALED COMPLAINT<br><br>Violations of<br>18 U.S.C. §§ 1343,<br>1349, and 2<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

DANIEL A. LEE, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service ("USPIS"), and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Wire Fraud)

1. From at least in or about May 2015 up to and including at least in or about August 2015, in the Southern District of New York and elsewhere, ERIC ROBINSON, ELDRIDGE MITCHELL, JHAYMES BETHEL BROWN, JR., CRAIG SMITH, AKIL CHRISTOPHER, and KORDELL NESBITT, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2. It was a part and an object of the conspiracy that ERIC ROBINSON, ELDRIDGE MITCHELL, JHAYMES BETHEL BROWN, JR., CRAIG SMITH, AKIL CHRISTOPHER, and KORDELL NESBITT, the defendants, and others known and unknown, willfully and

knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

**COUNT TWO**
(Wire Fraud)

3. From at least in or about May 2015 up to and including at least in or about August 2015, in the Southern District of New York and elsewhere, ERIC ROBINSON, ELDRIDGE MITCHELL, JHAYMES BETHEL BROWN, JR., CRAIG SMITH, AKIL CHRISTOPHER, and KORDELL NESBITT, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, the defendants engaged in a scheme in which they purchased multiple gift cards, at various United States Post Offices located in the Southern District of New York and elsewhere, using fraudulent credit cards.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Postal Inspector with the United States Postal Inspection Service ("USPIS") and I have been personally involved in the investigation of this matter. My duties and responsibilities include the investigation of fraudulent activities and crimes that affect the United States Postal Service, such as fraudulent schemes that involve or harm United States Post Offices. I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offenses

cited above, it does not include all the facts that I have learned during the course of the investigation. Where the contents of conversations of others are reported herein, they are reported in substance and in part.

## Summary of the Fraudulent Credit Card Encoding Scheme

5. Based on my personal participation in this investigation, I became aware that the scheme charged herein was designed to obtain scores of valuable gift cards, frequently from United States Post Offices, at the expense of someone other than the purported purchaser. Specifically, since at least as early as May 2015, a number of individuals, including all six defendants, have engaged in a scheme in which they purchase American Express, Visa, and/or MasterCard gift cards ("Gift Cards") -- often worth $500 each -- using fraudulent credit cards. The credit cards are fraudulent because they have been deliberately encoded with stolen bank account information; however, the credit cards are often made out in the names of the co-conspirators. As a result, the individual who purchases Gift Cards at the post office (by using a credit card) is not in fact the individual who is charged for the purchase. Rather, the individual(s) whose bank account information has been stolen and encoded into the fraudulent credit card is in fact paying for these Gift Cards, unbeknownst to them. Frequently, the stolen bank account information is for bank accounts maintained in foreign countries. Indeed, in connection with this scheme, each defendant used at least one credit card encoded with foreign bank account information.

6. The co-conspirators often attempted to purchase several Gift Cards at one time using fraudulent credit cards and a driver's license as a second form of identification. The co-conspirators often purchased, or attempted to purchase, multiple Gift Cards at various United States Post Offices located in the Southern District of New York and elsewhere, including in Connecticut and Pennsylvania, as well. In total, the defendants defrauded others, or attempted to defraud others, out of more than $150,000. The defendants spent some of their ill-gotten gains on purchases at Saks Fifth Avenue and at Apple Stores.

## JHAYMES BETHEL BROWN, JR.

7. Based on my conversations with an Ardsley, New York Police Department ("APD") Officer ("Officer-1"), my review of APD documents, and my review of documents provided by a post office located in Ardsley, New York (the "Ardsley Post Office"), I have learned, among other things, the following:

a. On or about August 24, 2015, an individual, later identified as JHAYMES BETHEL BROWN, JR. ("BROWN"), the defendant, entered the Ardsley Post Office and attempted to purchase seven $500 Gift Cards from an employee ("Employee-1") using a credit card in BROWN's name. Employee-1 recognized BROWN as an individual who had previously purchased multiple $500 Gift Cards at the Ardsley Post Office. Employee-1 asked BROWN for another form of identification to match to the credit card. In response, BROWN presented an expired driver's license with BROWN's name on it.

b. Based in part on Employee-1's interaction with BROWN and Employee-1's knowledge of BROWN's prior purchase of Gift Cards at the Ardsley Post Office, Employee-1 believed that the credit card presented by BROWN was fake. As a result, Employee-1 called the APD and informed it of BROWN's attempted purchase of seven $500 Gift Cards.

c. After calling the APD, Employee-1 informed BROWN that Employee-1 was unable to process BROWN's request for seven $500 Gift Cards. BROWN subsequently attempted to leave the Ardsley Post Office.

d. Upon exiting the Ardsley Post Office, BROWN was arrested by Officer-1 and taken to the Ardsley Police Department. There, BROWN waived his *Miranda* rights and informed Officer-1, in substance and in part, that BROWN was in possession of several fraudulent credit cards and had previously used a fraudulent credit card to purchase Gift Cards at the Ardsley Post Office.

e. During the search incident to BROWN's arrest, Officer-1 recovered, among other things, four credit cards in BROWN's name (the "Fraudulent Credit Cards"), an expired driver's license in BROWN's name, and a cellphone.

8. On the same day -- on or about August 24, 2015 -- after JHAYMES BETHEL BROWN, JR., the defendant, waived his *Miranda* rights, I interviewed BROWN at the Ardsley Police Department. During that interview, BROWN stated, in substance and in part, the following:

a. BROWN entered the Ardsley Post Office with the Fraudulent Credit Cards intending to purchase Gift Cards.

b. BROWN obtained the Fraudulent Credit Cards in the vicinity of Church and Chambers Streets in New York, New York, from an individual BROWN knows as "Black".

c. BROWN had used fraudulent credit cards in the past to purchase Gift Cards at various post offices. On at least one of those occasions, BROWN was driven to the post office by ELDRIDGE MITCHELL, the defendant. BROWN communicates with MITCHELL by cellphone.

9. Based on my review of USPS transaction details and my analysis of bank identification numbers,[1] I have learned, among other things, that the Fraudulent Credit Cards were encoded with bank account numbers for accounts maintained in foreign countries that are not held in the name of JHAYMES BETHEL BROWN, JR., the defendant. For example, one fraudulent credit card used by BROWN in this scheme was encoded with an account number ending in 8060 (the "8060 Account") for a bank account at Finecobank SPA. From my communications with an employee of Finecobank SPA, I have learned that BROWN did not have permission to use the 8060 Account; the transactions were deemed fraudulent, and the 8060 Account was subsequently closed.

10. Based on my analysis of cell phone records provided by AT&T, I have learned, among other things, that between January and August 2015, the number associated with the cell phone of JHAYMES BETHEL BROWN, JR., the defendant (the "BROWN Cell Phone"), had more than 900 direct communications with the number associated with the cell phone of ELDRIDGE MITCHELL, the defendant (the "MITCHELL Cell Phone").

11. Based on my participation in this investigation and my review of USPS documents and transaction details, I have learned that between on or about August 10, 2015 and on or about August 26, 2015, JHAYMES BETHEL BROWN, JR., the defendant, fraudulently obtained or attempted to obtain Gift Cards from at least 15 different post offices in the Southern District of New York and elsewhere.

<u>ELDRIDGE MITCHELL</u>

12. Based on my review of documents and video surveillance provided by a post office located in Hartsdale, New York (the "Hartsdale Post Office"), and my conversations with a Hartsdale Post Office employee ("Employee-2"), I have learned, among other things, the following:

---

[1] The first six digits of a credit card are known as a bank identification number, or "BIN," which identifies the issuing bank -- *i.e.*, the bank that holds responsibility for that account.

a. A receipt reveals a Gift Card purchase on or about August 6, 2015, at approximately 12:20 p.m., at the Hartsdale Post Office.

b. Video surveillance from the Hartsdale Post Office shows an individual, whom I believe to be ELDRIDGE MITCHELL, the defendant, exiting the Hartsdale Post Office shortly after 12:20 p.m.

13. Based on my review of historical cell site information for the MITCHELL Cell Phone, I have learned, among other things, that the MITCHELL Cell Phone was in the vicinity of the Hartsdale Post Office on or about August 6, 2015.

14. Based on my review of USPS transaction details and my analysis of bank identification numbers, I have learned, among other things, that fraudulent credit cards used in this scheme by ELDRIDGE MITCHELL, the defendant, were encoded with bank account numbers for accounts that are not held in MITCHELL's name. For example, one fraudulent credit card used by MITCHELL in this scheme was encoded with an account ending in 2084 (the "2084 Account") for a bank account at Citibank N.A. From my communications with an employee of Citibank N.A., I have learned that MITCHELL did not have permission to use the 2084 Account; the transactions were deemed fraudulent, and the 2084 Account was subsequently closed.

15. Based on my analysis of cell phone records provided by AT&T, I have learned, among other things, the following:

a. Between approximately January and August 2015, the MITCHELL Cell Phone had more than 900 direct communications with the BROWN Cell Phone.

b. On or about May 16, 2015, the MITCHELL Cell Phone had more than 30 direct communications with the cell phone associated with ERIC ROBINSON, the defendant (the "ROBINSON Cell Phone").

c. Between approximately April and September 2015, the MITCHELL Cell Phone had more than 50 direct communications with the cell phone associated with CRAIG SMITH, the defendant (the "SMITH Cell Phone").

16. Based on my review of historical cell site information, I have learned, among other things, that the location of the MITCHELL Cell Phone correlates to the vicinity of at least 15 different post offices where JHAYMES BETHEL

BROWN, JR., the defendant, fraudulently purchased Gift Cards, and signed for the transactions as "Jhaymes Brown," between on or about August 10, 2015 and on or about August 26, 2015. Indeed, the MITCHELL Cell Phone was in the vicinity of each of these post offices on the particular days that BROWN fraudulently purchased Gift Cards.

17. Based on my participation in this investigation, my review of USPS documents, transaction details, and video surveillance, and my review of historical cell site information, I have learned that between on or about July 31, 2015 and on or about August 26, 2015, ELDRIDGE MITCHELL, the defendant, fraudulently obtained, attempted to obtain, or aided and abetted the obtaining of Gift Cards from at least 24 different post offices in the Southern District of New York and elsewhere.

<u>ERIC ROBINSON</u>

18. Based on my review of documents provided by a post office located in Washingtonville, New York (the "Washingtonville Post Office"), and my conversations with a Washingtonville Post Office employee ("Employee-3"), I have learned, among other things, the following:

a. A receipt reveals a Gift Card purchase on or about August 17, 2015, at approximately 12:10 p.m., at the Washingtonville Post Office.

b. Employee-3 observed a white BMW car, with Maryland license plate number 9BY5216, outside of the Washingtonville Post Office on August 17, 2015. Employee-3 observed ERIC ROBINSON, the defendant, and another individual drive away from the Washingtonville Post Office in that car. From my review of Maryland Department of Motor Vehicles records, I know that a white BMW car (the "ROBINSON Car") and this Maryland license plate number are both associated with ROBINSON.

19. Based on my review of historical cell site information for the ROBINSON Cell Phone, I have learned, among other things, that the ROBINSON Cell Phone was in the vicinity of the Washingtonville Post Office on or about August 17, 2015.

20. Based on my review of documents provided by a post office located in Ardsley, New York (the "Ardsley Post Office"), I have learned, among other things, that on or about July 27, 2015, an individual entered the Ardsley Post Office and purchased a $500 Gift Card using a credit card.

21. Based on my review of historical cell site information for the ROBINSON Cell Phone, I have learned, among other things, that the ROBINSON Cell Phone was in the vicinity of the Ardsley Post Office on or about July 27, 2015.

22. Based in part on my review of American Express gift card records, I have learned, among other things, the following:

a. A particular IP address checked the balance of the American Express gift card purchased at the Ardsley Post Office on or about July 27, 2015. Based on my review of Optimum Online records, I have learned that the account associated with this IP address was subscribed to under the name "Erika Robinson".

b. An American Express gift card ending in 3703 was used to pay Geico car insurance.

23. Based on my review of Maryland Department of Motor Vehicles records, I know that the ROBINSON Car is insured by Geico.

24. On or about August 31, 2015, KORDELL NESBITT, the defendant, was arrested at a Post Office in Kingston, New York (the "Kingston Post Office") for buying $500 Gift Cards using a fraudulent credit card. I have reviewed historical cell site information for the ROBINSON Cell Phone, which shows that the ROBINSON Cell Phone was in the vicinity of the Kingston Post Office on or about August 31, 2015.

25. Based on my review of USPS transaction details and my analysis of bank identification numbers, I have learned, among other things, that fraudulent credit cards used in this scheme by ERIC ROBINSON, the defendant, were encoded with bank account numbers for accounts that are not held in ROBINSON's name. For example, one fraudulent credit card used by ROBINSON in this scheme was encoded with an account number ending in 0299 (the "0299 Account") for a bank account at Keybank N.A. in the name of "Victim-1". From my review of Victim-1's affidavit, which was provided by Keybank N.A., I have learned that ROBINSON did not have permission to use the 0299 Account; the transactions were deemed fraudulent, and the 0299 Account was subsequently closed.

26. Based on my analysis of cell phone records provided by AT&T, I have learned, among other things, the following:

a. Between approximately January and August 2015, the ROBINSON Cell Phone had more than 90 direct communications with the SMITH Cell Phone.

b. On or about May 16, 2015, the ROBINSON Cell Phone had more than 30 direct communications with the MITCHELL Cell Phone.

c. Between approximately January and September 2015, the ROBINSON Cell Phone had more than 170 direct communications with the cell phone associated with KORDELL NESBITT, the defendant (the "NESBITT Cell Phone").

d. On or about July 12, 2015, the ROBINSON Cell Phone had approximately 25 direct communications with the cell phone associated with AKIL CHRISTOPHER, the defendant (the "CHRISTOPHER Cell Phone").

27. Based on my participation in this investigation, my review of USPS documents and transaction details, and my review of historical cell site information, I have learned that between on or about May 30, 2015 and on or about August 31, 2015, ERIC ROBINSON, the defendant, fraudulently obtained, attempted to obtain, or aided and abetted the obtaining of Gift Cards from at least 19 different post offices in the Southern District of New York and elsewhere.

## CRAIG SMITH

28. Based on my review of documents provided by a post office located in Scarsdale, New York (the "Scarsdale Post Office"), and my conversations with a Scarsdale Post Office employee ("Employee-4"), I have learned, among other things, that a receipt reveals Gift Card purchases on or about July 25, 2015, at approximately 12:30 p.m., at the Scarsdale Post Office.

29. I have reviewed records of American Express gift card usage, which show that a particular IP address checked the balance of the American Express gift cards purchased at the Scarsdale Post Office on or about July 25, 2015. Based on my review of Optimum Online records, I have learned that the account associated with this IP address was subscribed to under the name of CRAIG SMITH, the defendant.

30. I have reviewed historical cell site information for the ROBINSON Cell Phone, which shows that the ROBINSON Cell Phone was in the vicinity of the Scarsdale Post Office on or about July 25, 2015.

31. Based on my review of documents provided by a Post Office located in Vails Gate, New York (the "Vails Gate Post Office"), and my conversations with another Postal Inspector who interviewed a Vails Gate Post Office employee ("Employee-5"), I have learned, among other things, the following:

a. A receipt reveals a Gift Card purchase on or about August 17, 2015, at approximately 10 a.m., at the Vails Gate Post Office.

b. Employee-5 identified CRAIG SMITH, the defendant, as the individual who purchased a Gift Card on or about August 17, 2015.

32. Based on my review of historical cell site information for the ROBINSON Cell Phone, I have learned, among other things, that the ROBINSON Cell Phone was in the vicinity of the Vails Gate Post Office on or about August 17, 2015.

33. Based on my review of USPS transaction details and my analysis of bank identification numbers, I have learned, among other things, that fraudulent credit cards used in this scheme by CRAIG SMITH, the defendant, were encoded with bank account numbers for accounts that are not held in SMITH's name. For example, one fraudulent credit card used by SMITH in this scheme was encoded with an account number ending in 6864 (the "6864 Account") for a bank account at Viseca Card Services SA ("Viseca"). From my communications with an employee of Viseca, I have learned that SMITH did not have permission to use the 6864 Account; the transactions were deemed fraudulent, and the 6864 Account was subsequently closed.

34. Based on my analysis of cell phone records provided by AT&T, I have learned, among other things, the following:

a. Between approximately January and August 2015, the SMITH Cell Phone had more than 90 direct communications with the ROBINSON Cell Phone.

b. Between approximately April and September 2015, the SMITH Cell Phone had more than 50 direct communications with the MITCHELL Cell Phone.

35. Based on my participation in this investigation and my review of USPS documents and transaction details, I have learned that between on or about July 25, 2015 and on or about August 17, 2015, CRAIG SMITH, the defendant, fraudulently obtained, or

attempted to obtain, Gift Cards from at least nine different post offices in the Southern District of New York and elsewhere.

AKIL CHRISTOPHER

36. Based in part on my review of documents provided by post offices located in Huntington, New York (the "Huntington Post Office") and Greenlawn, New York (the "Greenlawn Post Office"), I have learned, among other things, the following:

a. A receipt reveals that, on or about June 23, 2015, an individual purchased two $500 Gift Cards from the Huntington Post Office.

b. A receipt reveals that, on or about June 23, 2015, an individual purchased two $500 Gift Cards from the Greenlawn Post Office.

37. Based in part on my review of Suffolk County Police Department records, and my conversations with another Postal Inspector who interviewed AKIL CHRISTOPHER, the defendant, on or about June 23, 2015, I have learned, among other things, the following:

a. On or about June 23, 2015, CHRISTOPHER was arrested in Huntington, New York by officers with the Suffolk County Police Department for fraudulent purchases of multiple $500 Gift Cards, including from the Huntington Post Office and the Greenlawn Post Office. When CHRISTOPHER was searched incident to his arrest, he was found in possession of, among other things, the following:

b. A counterfeit Florida identification in the name of "Marcus James";

c. Approximately seventeen $500 Gift Cards purchased in locations ranging from Syracuse and Albany, New York to Stroudsburg, Pennsylvania; and

d. Approximately eleven fraudulently encoded credit cards in the name of "Marcus James".[2]

---

[2] CHRISTOPHER's driver on or about June 23, 2015 was also arrested and found in possession of fraudulently encoded credit cards.

38. Based on my review of documents and receipts provided by a post office located in Kingston, New York (the "Kingston Post Office"), and my conversations with a Kingston Post Office employee ("Employee-6"), I have learned, among other things, the following:

a. A receipt provided by the Kingston Post Office reveals two Gift Card purchases on or about July 21, 2015, at approximately 5 p.m. This receipt is signed by a name that appears to be "Akil Christopher".

b. I interviewed Employee-6, who recalled that "Akil Christopher" was the name on the credit cards of the individual purchasing the Gift Cards.

39. Based on my review of USPS transaction details and my analysis of bank identification numbers, I have learned, among other things, that fraudulent credit cards used in this scheme by AKIL CHRISTOPHER, the defendant, were encoded with bank account numbers for accounts that are not held in CHRISTOPHER's name. For example, one fraudulent credit card used by CHRISTOPHER in this scheme was encoded with an account number ending in 2694 (the "2694 Account") for a bank account at Canadian Imperial Bank of Commerce in the name of "Victim-1". From my conversation with Victim-1, I have learned that CHRISTOPHER did not have permission to use the 2694 Account; the transactions were deemed fraudulent, and the 2694 Account was subsequently closed.

40. Based on my analysis of cell phone records provided by AT&T, I have learned, among other things, that on or about July 12, 2015, the CHRISTOPHER Cell Phone had approximately 25 direct communications with the ROBINSON Cell Phone.

41. Based on my participation in this investigation and my review of USPS documents and transaction details, I have learned that between on or about June 22, 2015 and on or about July 28, 2015, AKIL CHRISTOPHER, the defendant, fraudulently obtained, or attempted to obtain, Gift Cards from at least 14 different post offices in the Southern District of New York and elsewhere.

KORDELL NESBITT

42. Based on my review of documents and video surveillance provided by a Post Office located in Saugerties, New York (the "Saugerties Post Office"), and my conversations with a Saugerties Post Office employee ("Employee-7"), I have learned, among other things, the following:

a. Employee-7 told me that KORDELL NESBITT, the defendant, attempted Gift Card transactions with multiple credit cards on or about August 31, 2015, but the transaction repeatedly did not go through.

b. Video surveillance from the Saugerties Post Office shows an individual, whom I believe to be NESBITT, attempting to purchase a Gift Card on or about August 31, 2015.

43. Based on my review of historical cell site information for the ROBINSON Cell Phone, I have learned, among other things, that the ROBINSON Cell Phone was in the vicinity of the Saugerties Post Office on or about August 31, 2015.

44. Based on my review of documents and video surveillance provided by a Post Office located in Kingston, New York (the "Kingston Post Office"), I have learned, among other things, the following:

a. A receipt provided by the Kingston Post Office reveals a Gift Card purchase on August 31, 2015, at approximately 11:50 a.m.

b. Video surveillance shows an individual, whom I believe to be KORDELL NESBITT, the defendant, purchasing a gift card in the Kingston Post Office on August 31, 2015, at approximately 11:50 a.m.

45. Based in part on my review of police records, I have learned, among other things, that on or about August 31, 2015, KORDELL NESBITT, the defendant, was arrested at the Kingston Post Office for buying a $500 Gift Card using a fraudulent credit card. NESBITT was found in possession of three fraudulently encoded credit cards as well as the Gift Card he had purchased at the Kingston Post Office. After waiving his *Miranda* rights, NESBITT said, among other things, the following:

i. These three credit cards were provided to him by ERIC ROBINSON, the defendant.

ii. ROBINSON was his driver.

46. I have reviewed historical cell site information for the ROBINSON Cell Phone, which shows that the ROBINSON Cell Phone was in the vicinity of the Kingston Post Office on or about August 31, 2015.

47. Based on my review of USPS transaction details and my analysis of bank identification numbers, I have learned, among other things, that fraudulent credit cards used in this scheme by KORDELL NESBITT, the defendant, were encoded with bank account numbers for accounts that are not held in NESBITT's name. For example, one fraudulent credit card used by NESBITT in this scheme was encoded with an account number ending in 8175 (the "8175 Account") for a bank account at Viseca Card Services SA ("Viseca"). From my communications with an employee of Viseca, I have learned that NESBITT did not have permission to use the 8175 Account; the transactions were deemed fraudulent, and the 8175 Account was subsequently closed.

48. Based on my analysis of cell phone records provided by AT&T, I have learned, among other things, that between January and September 2015, the NESBITT Cell Phone had more than 170 direct communications with the ROBINSON Cell Phone.

49. Based on my participation in this investigation and my review of USPS documents and transaction details, I have learned that on or about August 31, 2015 alone, KORDELL NESBITT, the defendant, fraudulently obtained, or attempted to obtain, Gift Cards from at least three different post offices in the Southern District of New York and elsewhere.

WHEREFORE, the deponent respectfully requests that warrants be issued for the arrest of ERIC ROBINSON, ELDRIDGE MITCHELL, JHAYMES BETHEL BROWN, JR., CRAIG SMITH, AKIL CHRISTOPHER, and KORDELL NESBITT, the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

DANIEL A. LEE
Postal Inspector
United States Postal Inspection Service

Sworn to before me this
25th day of April, 2016

THE HONORABLE FRANK MAAS
United States Magistrate Judge
Southern District of New York